# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA
# FRESNO DIVISION

| | |
|---|---|
| ERIC HASTING,<br><br>                     Petitioner,<br>vs.<br>MATTHEW CATE, Secretary[1],<br><br>                     Respondent. | Civil No.     1:06-0824 MLH (RBB)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

## I.    INTRODUCTION

Eric Hasting, a state prisoner proceeding pro se, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 and an Amended Petition in the United States District Court for the Eastern District of California challenging his Madera County Superior Court conviction in case number CR11653 for two counts of failing to register as a sex offender within the meaning of California Penal Code section 290(f)(1). (Clerk's Tr. at 000210-11.) Hasting claims the state court's application of the "Rule of Convenience" violated his federal constitutional rights, his convictions are not supported by

---

[1] The Court sua sponte substitutes the current Secretary of the California Department of Corrections and Rehabilitation, Matthew Cate, in place of J. Woodford, the former official. *See Ortiz-Sandoval v. Gomez,* 81 F.3d 891, 894 (9th Cir. 1996) (stating that the respondent in § 2254 proceedings may be the chief officer in charge of state penal institutions); *see also* FED. R. CIV. P. 25(d)(1) ("When a public official is a party to an action in his official capacity and during its pendency dies, resigns, or otherwise ceases to hold office, the action does not abate and the officer's successor is automatically substituted as a party.")

sufficient evidence, his convictions violate the Double Jeopardy Clause of the United States Constitution, and his sentence violates the Eighth Amendment to the United States Constitution and the Double Jeopardy Clause. (Am. Pet. 6-7E.)

The Court has considered the Amended Petition, Petitioner's Memorandum of Points and Authorities in Support of the Petition, Respondent's Answer and Memorandum of Points and Authorities in Support of the Answer, the Lodgments submitted by Respondent, and all the supporting documents submitted by the parties. Based upon the documents and evidence presented in this case, and for the reasons set forth below, the Petition is **DENIED.**

## II.     FACTUAL BACKGROUND

This Court gives deference to state court findings of fact and presumes them to be correct. *See* 28 U.S.C. § 2254(e)(1); *see also Parke v. Raley*, 506 U.S. 20, 35-36 (1992) (holding findings of historical fact, including inferences properly drawn from these facts, are entitled to statutory presumption of correctness). The relevant facts as found by the state appellate court are as follows:

> [A]ppellant resided at the Madera motel, where he had been placed by his parole officer, from December 27, 1998, through at least January 3, 1999, when he left without notifying the Madera Police Department of his move (§ 290, subd. (f)(1; count I).[2] [Footnote 2 omitted.] . . . . In addition, several witnesses testified that appellant moved into their apartment in Van Nuys, California, in July 1999, and lived there for a number of succeeding months before moving with one of the witnesses to Seattle in October 1999 without notifying the Madera Police Department of the move (count II.) That witness also testified that, to her knowledge, appellant had never been to Seattle, Washington, before moving there with her, that the move was instigated by her, and that appellant did not know Seattle and had no connections there. [Footnote 3 omitted.]

(Lodgment No. 3 at 2-3.)

## III.    PROCEDURAL BACKGROUND

On April 26, 2002, the Madera County District Attorney filed a First Amended Information charging Hasting with two counts of failing to update his address as required by California Penal Code section 290(f)(1), California's sex offender registration statute. (Clerk's Tr., 00001-03.) The complaint also alleged that Hasting had failed to annually update his address within five working days of his birthday, as required by Penal Code section 290(a)(1)(D). (*Id.*) Finally, the complaint alleged Hasting

---

[2] Hasting's parole officer performed Hasting's initial registration pursuant to Penal Code section 290 when he met with Hasting upon his release from prison.

had thee prior "strike" convictions, within the meaning of California Penal Code section 667(b) – (i) and three prior convictions for which he had served a prison term, within the meaning of Penal Code section 667.5(b). (*Id.*)

Hasting waived jury trial and a bench trial was conducted. The state trial judge found Hasting guilty of counts one and two, but not guilty of count three. (Rep. Tr. at 244-45.) He also found the prior strike and prior prison term allegations to be true. (*Id.*) He struck the prior strike and prior prison term allegations as to count two. (*Id.* at 262-63.) Hasting was sentenced to twenty-five years-to-life on count one and eight months consecutive on count two. (Clerk's Tr. at 000210-13.)

Hasting appealed his conviction to the California Court of Appeal for the Fifth Appellate District, which affirmed his conviction in an unpublished opinion filed June 1, 2004. (Lodgment No. 1.) Hasting then filed a Petition for Review in the California Supreme Court, which was granted. (Lodgment No. 2.) The California Supreme Court vacated the decision and remanded the case back to the state appellate court for consideration in light of a recent case, *People v. Britt*, 32 Cal. 4th 944 (2004).[3]

The state appellate court issued a second opinion on January 4, 2005, which again affirmed Hasting's conviction in an unpublished opinion. (Lodgment No. 3.) Hasting filed a second petition for review, which the California Supreme Court denied without citation of authority. (Lodgment No. 4.)

Hasting then filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the United States District Court for the Eastern District of California on June 19, 2005, and an Amended Petition on January 28, 2008. (Doc. Nos. 1, 22.) Respondent filed an Answer on April 24, 2008, and Hasting filed a Traverse on June 20, 2008. (Doc. Nos. 24, 29.) The matter was transferred to this Court on November 25, 2008. (Doc. No. 30.)

/ / /

/ / /

/ / /

/ / /

---

[3] In *Britt*, the California Supreme Court concluded that a defendant could not be separately prosecuted and punished for two separate violations of Penal Code section 290 based on one move. *Britt*, 32 Cal. 4th at 952-56.)

## IV. DISCUSSION

### A. Scope of Review

Title 28, United States Code, § 2254(a), sets forth the following scope of review for federal habeas corpus claims:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in <u>violation of the Constitution or laws or treaties of the United States.</u>

28 U.S.C. § 2254(a) (2006) (emphasis added). As amended, 28 U.S.C. § 2254(d) reads:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was <u>adjudicated on the merits</u> in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2) (2006) (emphasis added).

"[The Anti Terrorism and Effective Death Penalty Act] establishes a 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'" *Womack v. Del Papa*, 497 F.3d 998, 1001 (9th Cir. 2007) (quoting *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002)). Because Hasting's claims were adjudicated on the merits in state court, to obtain federal habeas relief, he must satisfy either § 2254(d)(1) or § 2254(d)(2). *See Williams v. Taylor*, 529 U.S. 362, 403 (2000). The Supreme Court interprets § 2254(d)(1) as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.* at 412-13; *see also Lockyer v. Andrade*, 538 U.S. 63, 73-74 (2003).

///

Where there is no reasoned decision from the state's highest court, the Court "looks through" to the underlying appellate court decision. *Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991). If the dispositive state court order does not "furnish a basis for its reasoning," federal habeas courts must conduct an independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court law. *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000) (overruled on other grounds by *Lockyer*, 538 U.S. at 75-76); *accord Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). A state court, however, need not cite Supreme Court precedent when resolving a habeas corpus claim. *Early v. Packer*, 537 U.S. 3, 8 (2002). "[S]o long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent,]" *id.*, the state court decision will not be "contrary to" clearly established federal law. *Id.*

**B.     Analysis**

Hasting raises five claims in his petition. First, he alleges that the state court's use of the "Rule of Convenience" deprived him of his federal constitutional right to have the prosecution prove every element of the offense charged in count two beyond a reasonable doubt. Second, he claims there was insufficient evidence to support his conviction for count one. Specifically, Hasting contends that because he claimed he had left the state before January 1, 1999, the prosecution did not prove he fell within an exception to the registration requirement. Third, he argues that a violation of Penal Code section 290(f)(2) is a continuing offense and can only be punished once. Fourth, he claims that his sentence violates the Eighth Amendment to the United States Constitution. Fifth, he alleges that the state court abused its discretion by failing to strike one of his prior strike convictions. (Am. Pet. at 6-7B.) Finally, he claims that the use of his prior convictions to enhance his current sentence violates the Double Jeopardy Clause of the United States Constitution. (Pet. at 7C-7E.)

Respondent argues that the state court's resolution of claims two and four were neither contrary to, nor an unreasonable application of, clearly established Supreme Court law. (Mem. P. & A. Supp. Answer at 4-6, 10-12.) As to claims one, three and five, Respondent argues that Hasting has not alleged the violation of a federal constitutional right and has thus failed to state a cognizable claim on federal habeas review. (*Id.* at 7-10, 12-14.)

/ / /

1. *Sufficiency of the Evidence to Support Count One (Claim Two)*

Hasting argues there was insufficient evidence presented to support his conviction for count one. Before January 1, 1999, sex offender registrants were not required to notify the law enforcement agency where they last registered if they left the state, only if they moved within the state. *See People v. Franklin*, 20 Cal. 4th 249, 252 (1999). Hasting's defense as to count two was based on his attempt to establish that he left California with his father for Seattle on December 29 or 30, 1998. (Rep.'s Tr. at 228-29.) Respondent contends the state court's denial of this claim is neither contrary to, nor an unreasonable application of clearly established Supreme Court law. (Mem. of P. & A. Supp. Answer at 4-6.)

The California Supreme Court denied Hasting's petition for review without citation of authority. (*See* Lodgment No. 4.) Accordingly, this Court must "look through" to the California appellate court's opinion as the basis for its analysis. That court wrote:

> There was sufficient evidence (*People v. Johnson* (1980) 26 Cal.3d 557, 576) to support a conclusion as to count 1 that appellant resided at the Madera motel, where he had been placed by his parole officer, from December 27, 2998, through at least January 3, 1999, when he left without notifying the Madera Police Department of his move (§ 290, subd. (f)(1); count I). [footnote 2.] The motel manager testified in part that he
>
> > [Footnote 2: The dates are significant because, before January 1, 1999, section 290 required notification only when the parolee moved within California and not when the parolee moved out of California. (*People v. Franklin* (1999) 20 Cal.4th 249, 252.) After January 1, 1999, notification was and is required regardless of the parolee's destination. (Stats. 1998, ch. 930, § 1.1.)]
>
> recalled that appellant had left the motel on the "Sunday" before the manager talked to appellant's parole officer. The parole officer testified that he talked to the motel manager on January 6, 1999. The Sunday before January 6, 1999, was January 3, 1999. In addition, several witnesses testified that appellant moved into their apartment in Van Nuys, California, in July 1999, and lived there for a number of succeeding months before moving with one of the witnesses to Seattle in October 1999 without notifying the Madera Police Department of the move (count II). That witness also testified that, to her knowledge, appellant had never been to Seattle, Washington, before moving there with her, that the move was instigated by her, and that appellant did not know Seattle and had no connections there.

(Lodgment No. 3 at 2-3.)

In assessing a sufficiency of the evidence claim, the Supreme Court has stated that "'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"

*Juan H. v. Allen*, 408 F.3d 1262, 1275 (9th Cir. 2005), quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

The evidence at trial established the following. Upon his release from prison on December 27, 1998, Hasting's parole agent, Dennis Reitz, completed an initial interview and advised Hasting of the conditions of his parole, including the registration requirement. (Rep.'s Tr. at 165-66.) He then set Hasting up in a motel across the street from the Madera parole office and told Hasting to report to the parole office the next day. (*Id.* at 166-67.) Hasting reported to Reitz the next day, and Reitz "reinforced some of the expectations that were addressed the day prior." (*Id.* at 167.) Reitz also told Hasting he would be reporting to him on a weekly basis until further advised. (*Id.*) When Reitz next tried to contact Hasting on January 4 and 5, 1999, he could not locate him at the motel. (*Id.* at 168-69.) On January 6, 1999, after again unsuccessfully trying to contact Hasting, he contacted the motel manager, Jesse Coralejo. (*Id.* at 170.) Coralejo testified that he told Reitz that Hasting's room had been vacant for two or three days and that he thought Hasting had left on a Sunday night, two or three days before his conversation with Reitz. (*Id.* at 178.) He explained that he took special notice of the rooms on the weekends because he did not want to cheat the government out of money if the room was empty. (*Id.* at 179.) On cross-examination, Coralejo admitted he had been convicted of child molestation and was on parole himself at the time the events occurred. (*Id.* at 180-82.) He also said he thought Hasting was placed at the motel in October, not December. (*Id.*)

Alexis Witt testified she was Hasting's girlfriend and lived with him in the apartment in Van Nuys in July of 1999. (*Id.* at 210-11.) Witt, Hasting and another roommate, Penny Wood, moved to Seattle in the fall of 1999. (*Id.* at 212-13.) They moved to Seattle because it was cooler and Witt knew someone who could get her a job. (*Id.* at 212.) She had never been to Seattle before and Hasting never indicated to her that he had ever been to Seattle before or that he knew anyone there. (*Id.* at 213-14.) On cross-examination, Witt admitted she did not know that Hasting was a sex offender or that he had to register, and that there were likely many more things she did not know about him. (*Id.* at 214-15.) On re-direct examination, she told the prosecutor that Hasting told her he had been living in Marysville before he moved to Van Nuys. (*Id.* at 216.) Penny Wood testified she moved to Seattle with Witt and Hasting. (*Id.* at 205.) They stayed with friends of Witt's in Seattle when they arrived. (*Id.* at 207.)

Hasting testified that he was released on parole on December 27, 1998 and that he was placed at the B&Z motel. (*Id.* at 228.) He claimed he left the motel with his father the night of December 29 or the early morning of December 30, 1998 and drove directly to Seattle. (*Id.* at 228-29.)

In addition to the above, the prosecution introduced tape recordings of phone calls Hasting made to Penny Wood, Alexis Witt and Kenneth Hasting, Hasting's father. (Clerk's Supp. Tr. on Appeal.) In his phone call to Wood and Witt, Hasting asked Witt if she had spoken to law enforcement. When she confirmed that she had, Hasting tried to get Witt to recant her statements and Witt hung up on him. (*Id.* at 00013-15.) In one conversation with his father, Hasting appeared to be coaching his father to testify that he drove up to Seattle with him on December 30, 1998. (*Id.* at 00019-24.)

Given this evidence, the state court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law. *Williams*, 529 U.S. at 412-13. There was sufficient evidence for the state judge to conclude that Hasting did not leave the state before January 1, 1999. Coralejo testified that Hasting had left the Sunday before he spoke to Reitz on January 6, 1999. The prosecutor introduced a 1998 and a 1999 calendar, which defense counsel stipulated were accurate, into evidence. (*Id.* at 168.) That calendar showed that the Sunday before January 6, 1999 was January 3, 1999. (*Id.* at 168-70, 178-79.) Although, as Hasting points out, Coralejo did have credibility problems, the judge was well within his fact finding authority to believe Coralejo, who had no motives for lying, and disbelieve Hasting, who had every motive to do so. Hasting is not entitled to relief as to this claim.

    2.    *Sufficiency of the Evidence to Support Count Two (Claim One)*

Hasting also claims that he was deprived of his federal constitutional rights because the prosecution did not present sufficient evidence of every element of the offense charged in count two. Count two alleged that Hasting had failed to notify the last registering agency of his change of address. (Clerk's Tr. at 000011-12.) Count two was based on Hasting's move from Van Nuys to Seattle. Hasting argues that prosecution did not present any evidence that Madera was the last agency with which he had

/ / /

/ / /

/ / /

registered because no evidence was presented that Hasting did not register in Van Nuys before his move to Seattle. (Pet. at 6-6B.) The state appellate court rejected this claim as follows:

> There was sufficient evidence to support a finding as to count 2 that Madera County was the law enforcement agency "with which [appellant] last registered" (§ 290, subd. (f)(1)). The prosecution's evidence established that appellant had registered in Madera County on December 29, 1998, and there was no other evidence that he registered anywhere else prior to his move from Van Nuys to Seattle in September 1999.
>
> If appellant had registered elsewhere between January 1999 and September 1999, it was incumbent upon him to present evidence of it under the "rule of convenience." (*People v. Mower* (2002) 28 Cal.4th 457, 477 [unless it is unduly harsh or unfair to a defendant, the burden of proving an exonerating fact may be imposed on a defendant if the existence of that fact is peculiarly within the defendant's knowledge and proof of the fact's nonexistence by the prosecution would be relatively difficult or inconvenient].) Appellant knew whether and where he last registered, if not in Madera County, and it would have been a relatively simple matter for him to present proof of it at trial. On the other hand, it would have been relatively inconvenient and difficult for the People to prove that appellant did not register with any of the hundreds, probably thousands, of other law enforcement agencies in California during the approximate[ly] nine months between December 1998 and September 1999. It is important to point out in this connection that there was no evidence appellant moved to Van Nuys directly from Madera. To the contrary, the evidence showed only that he left Madera in December 1998 or January 1999 and moved into the Van Nuys apartment in July 1999. His whereabouts during the intervening nine months were undisclosed. Indeed, had the prosecution proved that appellant had not registered with the proper Van Nuys authorities, we have little doubt he would be contending now that the People still had not proven their case because there was no prosecution evidence that appellant had not registered somewhere other than Van Nuys between January and September 1999.
>
> We do not view the burden on appellant in this respect to be any different than the burden imposed upon a defendant to prove possession of a driver's license if it would establish a complete defense to the charge of driving without a license. (See *In re Shawnn F.* (1995) 34 Cal.App.4th 185, 197.) Had appellant demonstrated that he had registered elsewhere between January 1999 and September 1999, he would have presented a complete defense to the crime charged in count 2 without also having to prove that he had notified that agency of his move to Seattle, because the information alleged specifically that the crime took place in Madera County. (See Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Jurisdiction and Venue, § 47, p. 137 [conviction cannot stand if evidence does not support proper venue, which must be alleged and proved by the prosecution].)
>
> None of appellant's objections to the application of the rule of convenience are persuasive. First, it is beside the point whether application of the rule would create a presumption that appellant did not register in Van Nuys. The question raised by count 2 was not where appellant in fact failed to last register but instead where appellant in fact last registered. Proof, by tangible evidence or intellectual presumption, that he did not register in Van Nuys would have been irrelevant, because he could not have committed the crime charged in count 2 by failing to notify an agency with which he did not last register. Second, for the same reason, whether or not his failure to notify Madera County of the move to Seattle constituted inadmissible propensity evidence that he also did not notify the Van Nuys authorities would have been irrelevant to the issues raised by count 2 because count 2 alleged a violation in Madera County not in Van Nuys. Third, application of the rule of convenience does not rewrite the statute any more than does

| | |
|---|---|
| 1 | application of the rule of convenience rewrite the statute prohibiting driving an automobile without a driver's license (Veh. Code, § 12500). (See *In re Shawnn F.*, *supra*, 34 Cal.App.4h at pp. 196-197.) The rule is procedural only, and simply identifies the party with the duty to produce evidence on a ceratin issue; the rule has nothing to do with the substantive elements of the particular crime charged. (*People v. Mower*, *supra*, 28 Cal.4th at pp. 477-478.) |

(Lodgement No. 1 at 3-5.)

Respondent claims that the state court's adjudication of this claim involves only a state court's application of its own law which does not implicate a federal constitutional right. (Mem. of P. & A. Supp. Answer at 7-9.) The state appellate court's application of California's "rule of convenience," however, instead of controlling federal law, does not render Hasting's claim devoid of its federal constitutional basis. Hasting alleges the prosecution did not prove an element of the crime with which he was charged with sufficient evidence and beyond a reasonable doubt, a right to which he is entitled under the United States Constitution. *See In re Winship*, 397 U.S. 358, 364 (1970); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Accordingly, the Court rejects Respondent's argument.

"*In re Winship* [citations omitted], declared that the Due Process Clause 'protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.'" *Martin v. Ohio*, 480 U.S. 228, 231-32 (1987) quoting *Winship*, 397 U.S. at 364. As discussed above, in assessing a sufficiency of the evidence claim, the Supreme Court has stated that "'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Juan H. v. Allen*, 408 F.3d 1262, 1275 (9th Cir. 2005), quoting *Jackson*, 443 U.S. at 319. In determining whether sufficient evidence has been presented, the Court must accept the elements of the crime as defined by state law. *See Jackson*, 443 U.S. at 324, n. 16. The elements of a violation of Penal Code section 290(f)(1) are:

(1) the defendant has a prior conviction for a sexual offense;
(2) as a result of that conviction, the defendant is required to register as a sex offender;
(3) the defendant had actual knowledge of his duty to inform in writing within 5 working days the law enforcement agency with which he last registered of his new address or location upon changing his residence;
(4) the defendant changed his residence address or location;

/ / /

/ / /

> (5) the defendant willfully and knowingly failed to inform in writing the law enforcement agency with which he last registered of the new address or location within 5 working days.

*See* Cal. Penal Code § 290(f)(1).

Hasting's claim focuses on element five. He argues that the prosecution did not present sufficient evidence that Madera County was the "last registering agency" because they did not establish that he did not register in Van Nuys during the period that he lived there. (Pet. at 6-6B.) The only evidence that Madera County was the last registering agency with respect to count two was circumstantial. Hasting's failure to notify Madera County of his move to Van Nuys and his eventual move out of state was circumstantial evidence that Hasting intended to avoid having to continue to register as a sex offender and thus did not register in Van Nuys. It would have been a much better practice, and a relatively simple matter, for the prosecution to have presented evidence that Hasting had not registered any where else in the state other than Madera County. *See*, *e.g., People v. Musovich*, 138 Cal. App. 4th 983, 987 (2006) (defendant's parole agent testified he checked the records of the state Department of Justice to determine where defendant's last registration occurred). Nevertheless, given the highly deferential standard this Court must apply on federal habeas review, the Court cannot say that no rational trier of fact could have found beyond a reasonable doubt that Madera County was the last law enforcement agency with which Hasting had registered and that he had willfully and knowingly failed to inform Madera County of his new address. *Juan H.*, 408 F.3d at 1275. Accordingly, the state court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law. *See Williams*, 529 U.S. at 412-13.

3. *Punishment for Two Section 290(f)(1) Violations (Claim Three)*

Next, Hasting claims that under California Penal Code section 654 he cannot be punished twice for the two instances of failing to register pursuant to Penal Code section 290(f)(1). (Pet. at 7.) Respondent counters that Hasting has not stated a federal constitutional claim because he has challenged only the state's application of its own sentencing laws. (Mem. of P. & A. Supp. Answer at 9-10.) Respondent is correct that Hasting appears to have raised this claim based solely on California state law and that the state appellate court addressed the claim solely on state law grounds. (*See* Pet. at 7; Lodgment No. 3 at 5-6.) As Respondent correctly notes, federal habeas relief is not available for an

alleged error in the interpretation or the application of state law. *See* 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67068 (1991). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws or treaties of the United States." *Estelle*, 502 U.S. at 68.

In any event, Hasting's claim fails even if this Court were to conduct a Double Jeopardy analysis of the claim.[4] In analyzing a federal habeas claim, federal courts are "bound by a state court's construction of its own penal statutes." *See Aponte v. Gomez*, 993 F.2d 705, 707 (9th Cir. 1993). The California Supreme Court held in *People v. Britt*, 32 Cal. 4th 944, 953-54 (2004) that "a person subject to section 290's reporting requirements who changes residence a single time within California without reporting to any law enforcement agency, and who thus violates both subdivision (a) and (f) of section 290, may be punished for one of those crimes, but not both." The court reasoned that the crime was a continuing one because the defendant had a single objective — avoiding police surveillance — which could only be accomplished by violation of both provisions. *Britt*, 32 Cal. 4th at 953. In contrast, Hasting changed his residence twice and each time had the separate objective of seeking to avoid police surveillance. Indeed, the *Britt* court specifically excluded situations involving multiple moves from its holding. *See Britt*, 32 Cal. 4th at 951, n.4.

For all the forgoing reasons, the state court's denial of this claim is neither contrary to, nor an unreasonable application of, clearly established Supreme Court law. *Williams*, 529 U.S. at 412-13.

4. *Eighth Amendment (Claim Four)*

Hasting argues the sentence of twenty-five years to life he received violates the United States Constitution's ban on cruel and unusual punishments. (Pet. at 7-7A, 7C-7E.[5]) Respondent counters that the state court's denial of this claim was consistent with clearly established Supreme Court law. (Mem. of P. & A. Supp. Answer at 10-12.) The California Court of Appeal, to which this Court must look for its analysis, denied the claim in one sentence, stating that "[t]he sentence imposed upon appellant was

---

[4] The Double Jeopardy Clause "'serves the function of preventing both successive punishment and successive prosecution.'" *Witte v. United States*, 515 U.S. 389, 396 (1995) (quoting *United States v. Dixon*, 509 U.S. 688, 704 (1993).)

[5] Petitioner's Ground Six, contained in pages 7C-7E, is simply more support for his Eighth Amendment argument. Thus, the Court does not separately address Petitioner's Ground Six.

not cruel or unusual under the federal Constitution or the state Constitution. (*Ewing v. California* (2003) 538 U.S. 11; *Lockyer v. Andrade* (2003) 538 U.S. 63; *In re Lynch* (1972) 8 Cal.3d 410.)" (Lodgment No. 3 at 8.)

In *Lockyer*, the Supreme Court concluded that the only clearly established legal principle which could be discerned from the Supreme Court's Eighth Amendment jurisprudence was that "[a] gross disproportionality principle is applicable to sentences for a term of years...the precise contours of which are unclear, [and which is] applicable only in the 'exceedingly rare' and 'extreme' case." *Andrade*, 538 U.S. at 72-73 (citing *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991)). The Supreme Court also explained that "the governing legal principle gives legislatures broad discretion to fashion a sentence that fits within the scope of the proportionality principle –- the 'precise contours' of which 'are unclear.'" *Id.* at 76 (quoting *Harmelin*, 501 U.S. at 998.) Because of this, "[t]he gross disproportionality principle reserves a constitutional violation for only the extraordinary case." *Id.* at 77.

The Ninth Circuit, in *Ramirez v. Castro*, 365 F.3d 755 (9th Cir. 2004), gave this Court some guidance as to the kind of "exceedingly rare" Eighth Amendment claim that warrants federal habeas relief. *See Duhaime v. Ducharme*, 200 F.3d 597, 600 (9th Cir. 2000) (finding that Ninth Circuit "cases may be persuasive authority for purposes of determining whether a particular state court decision is an 'unreasonable application' of Supreme Court law, and also may help us determine what law is 'clearly established'"). In *Ramirez*, the court concluded that a sentence of twenty-five years-to-life for a nonviolent shoplifting of a $199.00 VCR where the defendant's prior convictions were two nonviolent second degree robberies violated the Eighth Amendment. *Ramirez*, 365 F.3d at 775. Ramirez's prior robberies did not involve weapons, and the "force" in both was minimal. *Id.* at 768. Moreover, the one-year jail term Ramirez received for the two robberies was also indicative of the less-than-serious nature of the offenses, and it "was the only period of incarceration ever imposed upon Ramirez prior to his Three Strikes sentence." *Id.* at 769. Comparing Ramirez's case to Rummel, Solem and Andrade, the court concluded that "this [was] the extremely rare case that gives rise to an inference of gross disproportionality." *Id.* at 770, 775. After conducting intra- and interjurisdictional comparisons of Ramirez's sentence, the court found that the state court's decision to uphold Ramirez's sentence was an objectively unreasonable application of clearly established Supreme Court law. *Id.* at 770-73.

The Ninth Circuit recently applied Eighth Amendment jurisprudence in the context of California's sex offender registration statute in *Gonzalez v. Duncan*, 551 F.3d 875 (9th Cir. 2008). In *Gonzalez*, the defendant was charged with failing to register with police within five working days of moving into a jurisdiction, in violation of Penal Code section 290(a)(1)(A)[6] and failing to update his registration within five working days of his birthday, in violation of Penal Code section 290(a)(1)(D). Gonzalez had registered on May 23, 2000 at which time he was advised of his obligation to register annually within five working days of his birthday, which was on February 24. *Id.* at 878. Gonzalez did not register again until May 21, 2001, which was within one year of his previous registration but three months after his birthday. *Id.* Gonzalez was acquitted of the section 290(a)(1)(A) allegation and convicted of the section 290(a)(1)(D) allegation. *Id.* at 878. Because Gonzalez had prior convictions for cocaine possession, committing a lewd act on a child under fourteen, attempted rape by force and second degree robbery, he was sentenced to twenty-eight years-to-life. *Id.* at 879.

The Ninth Circuit ultimately concluded the sentence violated the Eighth Amendment. The Court first considered whether the sentenced gave rise to an inference of gross disproportionality by examining both the gravity of the offense and the severity of the penalty. *Id.* at 883-87. With regard to the gravity of the offense, the Court discussed the purpose of California's sex offender registration law and the distinction between the two provisions with which Gonzalez was charged:

> The purpose of California's registration law is to prevent "recidivism in sex offenders by assuring they are "available for police surveillance." *Wright v. Superior Court*, 15 Cal. 4th 521 [citations omitted] (1997) (internal quotations marks and citations omitted). Section 290(a)(1)(A)'s mandate that sex offenders register any change of address relates directly to the state interest in ensuring that it knows the whereabouts of its sex offenders. As noted by the California Supreme Court, "[e]nsuring offenders are readily available for police surveillance depends on timely change-of-address notification." *Id.* at 105 (internal quotations marks and citations omitted). A jury, however, acquitted Gonzalez of the charge that he violated this requirement. Accordingly, we adopt the jury's implicit determination that Gonzalez was living at his registered address throughout the relevant time period in this case.
>
> By contrast, § 290(a)(1)(D)'s annual registration requirement, which Gonzalez was convicted of violating, is only tangentially related to the state's interest in ensuring that sex offenders are available for police surveillance. Annual registration is merely a "backup measure to ensure that authorities have current accurate information." *People*

---

[6] When a sex offender moves, California's sex offender registration statute requires him or her to register with the Chief of Police for the new jurisdiction (§ 290(a)(1)(A)) and notify the last jurisdiction in which he or she registered of the new address (§ 290(f)(1)(A)).

> *v. Carmony*, 127 Cal. App. 4th 1066 [citations omitted] (2005). Failure to comply with the annual registration requirement is "the most technical violation of the section 290 registration requirement," and "by itself, pose[s] no danger to society." *People v. Cluff*, 87 Cal. App. 4th 991 [citations omitted] (2001).
>
> . . . .
>
> In reviewing Three Strikes sentences triggered by violations of the sex offender registration law, California courts have recognized that the distinction between a conviction for failure to register after a change of address as required by § 290(a)(1)(A), and a conviction for failure to update a registration annually as required by § 290(a)(1)(D), is critical. In *People v. Meeks*, the Court of Appeal held that imposition of a 25 years to life sentence for failure to register a change of address and a consecutive sentence of two years imprisonment for failure to update registration annually did not violate the Eighth Amendment. 123 Cal.App.4th 695 [citations omitted] (2004). By contrast, in *Carmony*, the Court of Appeal held that a sentence of 25 years to life imprisonment merely for failure to update registration annually did violate the Eighth Amendment. 26 Cal.Rptr3d at 365.
>
> . . . .
>
> Although we independently evaluate federal constitutional claims, in doing so we are bound by the California courts' interpretations of California law. *See Powell v. Lambert*, 357 F.3d 871, 874 (9th Cir. 2004). Accordingly, we follow the Court of Appeal in finding that violation of the annual registration requirement of § 290(a)(1)(D) alone is "an entirely passive, harmless and technical violation of the registration law." *Carmony*, 26 Cal.Rptr.3d at 372.

*Gonzalez*, 551 F.3d at 884-86.

In analyzing the gravity of the offense, the Court also considered Gonzalez's prior criminal history, which was extensive and serious, including possession of drugs, car theft, attempted forcible rape, lewd conduct with a child under the age of fourteen, robbery and spousal abuse. The Court found, however, that there was "no rational relationship between Gonzalez's failure to update his sex offender registration annually and the probability that he will recidivate as a violent criminal or sex offender." *Id.* at 887. This lack of connection between Gonzalez's past behavior and his current conviction could not justify an increased sentence for the "passive, harmless and technical violation of the registration law" of which Gonzalez was convicted. *Id.* Accordingly, because Gonzalez's sentence was the "third most severe penalty available under California law, exceeded in severity only by death and life imprisonment," his sentence raised an inference of gross disproportionality. *Id.* at 887.

The Court then conducted intra- and interjurisdictional comparisons and found that the twenty-eight year to life sentence imposed on Gonzalez was "substantially more severe than penalties California imposes for far more serious crimes, including second degree murder (fifteen years to life), voluntary

manslaughter (three six or eleven years) and rape (three, six or eight years). *Id.* Moreover, the Court found that "[i]n at least ten jurisdictions a first registration offense is a misdemeanor," and "Texas appears to be the only state besides California that would *mandate* a sentence of 25 years or longer for a third felony offense, including a violation of a sex offender registration law." *Id.* at 887-88. Accordingly, the Court concluded that Gonzalez's sentence violated the Eighth Amendment. *Id.* at 889.

Hasting's case is readily distinguishable from *Gonzalez*. First, Hasting was not convicted of the same offense as Gonzalez, namely failing to update his address within five working days of his birthday (Penal Code § 290(a)(1)(D)), but rather was convicted of failing to notify the last place he registered of his new address (Penal Code § 290(f)(1)). This violation, unlike Gonzalez's "passive, harmless and technical violation of the registration law," goes to the heart of the purpose of the sex offender registration law, i.e., making sex offenders readily available for police surveillance. Hasting clearly attempted to circumvent such surveillance by twice failing to notify authorities of his change of address. Hasting also failed to notify his parole officer of his moves. These actions indicate an intent to avoid being monitored by police.

In addition, in contrast to Gonzalez, Hasting's current conviction does bear some rational relationship to his propensity to recidivate. *See Gonzalez*, 551 F.3d at 887. In contrast to Gonzalez, who has a significant criminal history before his sex offender registration violation, Hasting's prior convictions consist solely of the offenses which form the basis for his sex offender registration requirement. Hasting's offenses, however, are more serious. Hasting was convicted as a juvenile of attempted murder, forcible oral copulation and forcible rape, two allegations of use of a deadly weapon and one allegation of personal infliction of great bodily injury. (Clerk's Tr. at 000166.) He was sentenced to twenty years imprisonment and was released in September of 1996. He thereafter committed five parole violations from 1996 to 2001, twice for absconding parole. (*Id.* at 000185.) Thus,
Hasting's current offense, coupled with his criminal history, reveal more of a "propensity to recidivate" than in *Gonzalez*. *See Gonzalez*, 551 F.3d at 887.

For all the foregoing reasons, Hasting's case is not the "extremely rare" case which gives rise to an inference of disproportionality.[7] *See Ramirez*, 365 F.3d at 770; *Gonzalez*, 551 F.3d at 879-83. The denial of this claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law. *Williams*, 529 U.S. at 412-13.

5. *Failure to Strike Hasting's Prior Strike Convictions (Claim Five)*

Hasting argues in claim five that the trial court abused its discretion by refusing to "strike any strikes as to count one." Respondent argues Hasting has not presented a federal constitutional question because the claim relates solely to California's application of its own sentencing laws. (Mem. of P. & A. Supp. Answer at 12-14.) The state appellate court's opinion, to which this Court must look as the basis for its analysis under *Ylst*, resolved this claim as follows:

> The trial court did not abuse its discretion by failing to dismiss all of the "strike" prior convictions (§ 667, subds. (b)(-(i)) found true by the court. (See *People v. Carmony* (2004) 33 Cal.4th 367, 378.) Appellant's prior offenses were horrendous. Though he has already been punished for those offenses, the nature of the offenses imposed upon him the additional requirement that he cooperate in society's effort to help and to protect victims like his. This he has not only failed to do but has deliberately and prolongedly refused to do. The crimes here were not de minimus. Neither is this a *Burgos* [footnote omitted] situation. Though the prior offenses were committed against a single victim, they had separate objectives. On the other hand, appellant's prior offenses — attempted murder, rape and oral copulation by force, with findings that he used a firearm[8] and inflicted great bodily injury during the commission of those crimes — were committed when he was just 17 years old, and there is reason to think that a combination of drugs and alcohol played some part in their commission. Though appellant repeatedly violated the terms of his parole after his first release from prison, and committed the first of the current offenses within weeks of his second release, he did manage to live free of any new arrests during the two years between that second release and his apprehension. He apparently was working and productive during that time.
>
> The trial court was well aware of its discretion and based its decision not to dismiss the priors appended to count 1 on the court's assessment of all the relevant factors and evidence, including the facts noted above, as disclosed by the probation report, the evidence before the court and the arguments of counsel. The question is abuse of discretion, and none is shown. There is nothing irrational or arbitrary about the trial court's resolution of the issue, given the conflicting positions and evidence. (*People v. Carmony*, *supra*, 33 Cal.4th at p. 375.) Appellant's brief on this point manifests nothing more than a view about the weight and import of the record different from the view of it taken by the trial court and thus does not demonstrate an abuses of discretion as a matter of law. (*Ibid*.)

---

[7] The Court need not, therefore, engage in an intra- and interjurisdictional comparison of Hasting's sentence as the "threshold question" of an "inference of gross disproportionality" has not been met. *See Harmelin v. Michigan*, 501 U.S. 957, 1005(1991).

[8] Appellant used a knife in his attack, so it is unclear why the appellate court refers to Hasting's use of a firearm. (Clerk's Tr. at 000167-84.)

(Lodgment No. 3 at 7-8.)

Respondent is correct that Hasting has raised this solely as a question of state law and the state appellate court addressed as such as well. As previously noted, federal habeas relief is not available for an alleged error in the interpretation or the application of state law. *See* 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67068 (1991). Accordingly, Hasting has not established the state court's denial of this claim was contrary to, nor an unreasonable application of, clearly established Supreme Court law. *Williams*, 529 U.S. at 412-13.

6. *Double Jeopardy (Claim Six)*

In his final claim, Hasting argues that the state court's conclusion that his offenses were not "de minimus" and the use of his prior convictions to give him a life sentence violate the Double Jeopardy Clause. (Pet. at 7C.) Respondent contends Hasting has not established how his convictions violate these federal constitutional provisions. (Mem. of P. & A. Supp. Answer at 13-14.) The state appellate court did not address this claim in their opinion, and Respondent does not contend the claim is unexhausted. Accordingly, this Court must conduct an independent review of the record to determine whether the denial of this claim was contrary to, or an unreasonable application of, clearly established Supreme Court law. *Himes*, 336 F.3d at 853.

The use of Hasting's prior convictions to enhance his current sentence does not violate the Double Jeopardy Clause. In *United States v. Kaluna*, 192 F.3d 1188, 1198-99 (9th Cir.1999) (en banc) the Ninth Circuit observed that "the enhanced punishment imposed for the later offense is not to be viewed as either a new jeopardy or additional penalty for the earlier crimes, but instead as a stiffened penalty for the latest crime." (internal quotation marks omitted). The same reasoning applies to California's Three Strikes Provision. *See Simpson v. Thomas*, 528 F.3d 685, 690 (9th Cir. 2008.) Accordingly, Hasting is not entitled to relief as to this claim. *Williams*, 529 U.S. at 412-13.

## V. CONCLUSION

Having carefully considered Hasting's Amended Petition, Respondent's Answer and Memorandum of Points and Authorities in Support of the Answer, Hasting's Traverse, and all the

/ / /

/ / /

1 documents and legal authorities submitted by the parties, for all the foregoing reasons the Court
2 **DENIES** the petition. The Clerk of Court is directed to enter a judgment denying the petition with
3 prejudice.

**IT IS SO ORDERED.**

**DATED:** April 6, 2009

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT